**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **JENNIFER BRIDGES, BOB NEVENS** § <br> **MARIA TREVINO, RICARDO ZELANTE,** § <br> **LATRICIA BLANK, BENNIE LOPEZ,** § <br> **TAMMY LINKENHOKER, MADELINE DIB,** § <br> **HUNTER WARD, AMBER KIMICH, ALISON** § <br> **ANTU, BETTY SAMUEL, VICTORIA WEBB,** § <br> **EDNA BARRERA, JOSEPH HOYT,** § <br> **PRISCILLA LARA, KARA SHEPHERD,** § <br> **GILBERTO LARA, LUZ HERNANDEZ,** § <br> **ASHLEY HEINRICH, KATIE YARBER,** § <br> **JENNIFER WARREN, JOANN CRUMP** § <br> **CREAMER, TATYANA LAZARENKO,** § <br> **RANDI VINCENT, ANA ESCOBAR,** § <br> **ADRIANA GALVAN, STARLA** § <br> **HAUGENATER, JADE HERNANDEZ,** § <br> **LAURA BOWDEN, MONICA ESTRELLA,** § <br> **ALEXIS LOPEZ, KATHARINE BROL,** § <br> **CHARLES VARGNESE, ARLIN CAMERON** § <br> **ASHTON HANLEY, ASHLEY LEON, JUDITH** § <br> **ANDRIKO, MONA WILSON, JULIE DE** § <br> **TORRE, STACEY HANZELKA, SARA PIKA,** § <br> **LATASHA WOODS, CELINA ELVIR,** § <br> **GIOVANNI SAVANS, BRIAN FELGERE,** § <br> **NICOLE SMITH, JONAE POWELL, TARA** § <br> **HANSEN, TERAH TREVINO, STEPHANIE** § <br> **DUNLAP, PAMELA ROBINS, BRENDA** § <br> **ESCOBAR, PIERRE CHARLAND, JAMES** § <br> **MCCANN II, MICHELLE FUENTES,** § <br> **CHERRI MOSLEY, AHMED MONTGOMERY** § <br> **AMANDA BLANTON, JOHN LASSEIGNE,** § <br> **LINDA PICKARD, DANA JANOCH,** § <br> **DAJUANA ARMSTRONG, AVERI REED,** § <br> **AMBER BAKER, JAMES SMILEY, DARIUS** § <br> **GARDNER, KARENE TANNER, MCKENLI** § <br> **PINKNEY, SAUL RODRIGUEZ, BROOKE** § <br> **LIGHTHALL, LORRI CURTO, KIMBERLY** § <br> **RENSI, MARY APACWAY, MATHEA** § <br> **VOLESKY, SANTANA HENDERSON-JONES,** § <br> **KIM MIKESKA, BRANDY MANN, LAURICA** § <br> **WOOTEN, LEEVETRA SEALS,** § | **Civil Action No. 4:21-CV-01774** |

1

| | |
|---|---|
| **CHRISTINA PINEROS, BRIAN CLEGG, KATHERINE SWEITZER, NORMA MILLER CARMEN LATORRE, FREENEA STEWART, THERESA PORCHE, DEBRA BAUGH, SHARON HOLLIER, SAMANTHA HANLON TERYN ESSLER, KAREN WITT, JEFFREY HINTON, ANGELA LAVESPERE SIERRA DOCKRAY, SANDRA ALTAMIRANO, JOHN BROCKUS, ROBERT MORIN, OSCAR ZAMUDIO, CYNTHIA STRAUSS, ROGELIO MENDEZ, SAVANNAH HANSON, JASON JIMENEZ, ALEXANDRA WILLIAMS, STEPHANIE HILTON, ELSA MEJIA, SHAUNA HERIN, PAUL HERIN, SHAYLONDA JACKSON, ZORETTA CURRY CYNTHIA PUENTE, SHERRY COLBERT, REBEKAH FONTENOT, ROSE ALDAYA, TIMOTHY ROSILEZ, WALTER INFANTES,** | § § § § § § § § § § § § § § § § § § § § § |
| Plaintiffs, | § § |
| V. | § § |
| **THE METHODIST HOSPITAL D/B/A THE METHODIST HOSPITAL SYSTEM, AND HOUSTON METHODIST THE WOODLANDS HOSPITAL,** | § § § § § |
| **Defendants.** | § |

### PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

TO THE HONORABLE UNITED STATES DISTRICT COURT:

JENNIFER BRIDGES, *et al*. ("Plaintiffs") in the above-referenced cases and file this Emergency Motion for Temporary Restraining Order against THE METHODIST HOSPITAL D/B/A THE METHODIST HOSPITAL SYSTEM and HOUSTON METHODIST THE WOODLANDS HOSPITAL ("Defendants"). Plaintiffs respectfully request the following from this Court:

2

Enjoin the Defendants from enforcing an arbitrary June 7, 2021 deadline by which all employees have been ordered to subject themselves to an experimental vaccine.

### Brief Factual Chronology and Background

**January 30, 2020** – World Health Organization declares a global health emergency.[1]

**May 15, 2020** – Operation Warp Speed was formally announced in the White House Rose Garden. The purpose was to coordinate system-wide efforts to encourage faster vaccine development, among other goals.[2]

**December 11, 2020** - The United States Food and Drug Administration ("FDA") issued the first emergency use authorization ("EAU") for an experimental vaccine for the prevention of coronavirus disease 2019 ("COVID-19").[3] An EUA, by definition, applies to drugs that are not approved.[4]

**On April 1, 2021** - Defendants issued a policy "requiring mandatory immunization of all covered Houston Methodist (HM) employees." (Exh. A). This policy was implemented in two phases. First, management level employees were required to subject to the experimental vaccine by April 15, 2021. The Plaintiffs in this matter are considered Phase 2 employees under the Defendants' two-phase vaccination order. The Plaintiffs are required to "get any approved one-dose vaccine or provide proof of vaccination by a third-party provider to Employee Health on or before June 7, 2021." (Exh. A). Phase 2 employees are required "[t]o receive both doses of any

---

[1] https://www.nytimes.com/article/coronavirus-timeline.html.
[2] https://web.archive.org/web/20201216233803/https://www.hhs.gov/about/news/2020/05/15/trump-administration-announces-framework-and-leadership-for-operation-warp-speed.html.
[3] https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/covid-19-frequently-asked-questions. The Pfizer/BioNTech COVID-19 Vaccine was the first approved. It was followed on December 18, 2020 by the Moderna vaccine. Finally, on February 27, 2021, the Jansen Covid-19 vaccine.
[4] According to the FDA's website, "under an EUA, FDA may allow the use of **unapproved** medical products, or unapproved uses of approved medical products in an emergency . . ." https://www.fda.gov/vaccines-blood-biologics/vaccines/emergency-use-authorization-vaccines-explained.

approved two-dose vaccine (e.g., Pfizer, Moderna) through HM, or provide proof of vaccination from a third-party provider on or before June 7, 2021." *Id*. The employee who fails to timely comply with the Defendants' self-imposed deadlines will be "placed on unpaid suspension for up to 14 days so that the employee can come into compliance." *Id*. "All employees who have not received both doses of the vaccine or meet the exemption requirements as of the completion of the applicable 14-day suspension period **will be terminated from employment** by HM." *Id*. (Emphasis added).

**June 7, 2021** - The Deadline by which the Plaintiffs in this case are required to subject themselves to the experimental vaccine or be discharged from employment.

## Argument

### A. The Applicable Legal Standard Warrants Issuance of a TRO

The issuance of a Temporary Restraining Order ("TRO") is proper pursuant to Federal Rule of Civil Procedure 65. In determining whether to issue a TRO, the Fifth Circuit has set out the following four factors: (1) substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (3) that greater injury will result in denying the temporary restraining order than from its being granted; and (4) that a temporary restraining order will not disserve the public interest. *Clark v. Princhard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc). The party seeking the TRO must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order can be granted. *See Miss. Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985).

Here, Plaintiffs satisfy all four factors necessary for issuance of a TRO. First, given that the Defendants are violating policies set out in federal law by requiring employees be subjected to

an experimental vaccine, the clear evidence establishes that Plaintiffs have a substantial likelihood to succeed on the merits of their claims. The harm from that is clear. Because of the Defendants' actions, the Plaintiffs will either lose their jobs or be subjected to an experimental vaccine that cannot be "untaken." Considering these clear harms, it is the Plaintiffs who will suffer the greater injury if this injunction is not granted. Methodist will suffer <u>no injury</u>, except possibly to its reputation for instituting this misguided policy. Finally, granting a TRO will not disserve the public interest as Defendants are strangely proud of the fact that they were the only hospital to require the vaccine.[5] So, if the court grants this injunction, Defendants will simply be ordered to do what a vast majority of U.S. hospitals are already doing – not requiring the experimental vaccine. This does not disserve the public.

### B. There is a substantial likelihood that Plaintiffs will succeed on the merits

While this is a case of first impression, the policy implications are clear.[6] The very statute that allowed the FDA to emergently approve an experimental vaccine also instituted explicit limits

---

[5] On May 20, 2021, one other hospital, Pennsylvania Health System, announced it will require all employees to be subject to the experimental vaccine.

[6] There are no court decisions stating whether private employers may mandate vaccines or other drugs authorized under an EUA. In early March 2021, in the US District Court, District of New Mexico, a detention center employee filed a complaint seeking a temporary restraining order and preliminary injunction against Dona Ana County. The employee argued that the County's mandatory COVID-19 vaccination requirement for first responders is preempted by the EUA statute, 21 USC § 360bbb-3, and violates his 14th Amendment right to a zone of privacy. The County/defendant filed a response to the motion for an injunction on March 15, 2021, explaining the EUA statute 21 USC § 360bbb-3 at most requires vaccine recipients to be informed of the consequences of refusing the vaccine. In response to the Fourteenth Amendment argument, the County/defendant cited numerous authorities holding that the argument that mandatory vaccination program violates the Fourteenth Amendment was "foreclosed by the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905)." Just four days after the defendant/County filed the response brief, the plaintiff filed a notice withdrawing the motion for injunction on March 19, 2021. Thus the Court did not rule on any of these issues. In one other case that mentions the EUA statute relative to COVID-19, *Aviles v Blasio,* 20 CIV. 9829 (PGG), 2021 WL 796033 (SDNY Mar. 2, 2021), parents sued the City of New York seeking a preliminary injunction requiring the reopening of all public schools for in-person instruction and forbidding the City from requiring students to take COVID-19 tests for in person instruction. The Southern District of New York denied the motion, holding that the students were not deprived of any constitutional rights because they were offered remote learning, and their parents could opt out of COVID-19 testing and still receive remote instruction. In a

on its use. Defendants have ignored those limits and run roughshod over the lives of dedicated employees who are hesitant to take an experimental vaccine.

The federal statute that allows the emergency use of an "unapproved product," 21 U.S.C. § 360bbb-3, also creates certain policy requirements that are flagrantly ignored and violated by the Defendants. Subsection (e)(1)(A)(ii)(III) explicitly recognizes that persons presented with the "unapproved product" should be given "the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." (Exh. B). Obviously, the Plaintiffs do not have the option to accept or refuse the experimental vaccine without also losing their livelihoods or being subjected to a vaccine with unknown and untested, long-term side effects. Every other hospital in the U.S. is recognizing this important policy interest.

As of June 7, 2021, most of the Plaintiffs will be fired, if CEO Dr. Marc Boom is to be believed. That will constitute a wrongful discharge. In *Sabine Pilot v. Service, Inc. v. Hauck*, the Supreme Court of Texas created a public policy exception to the employment-at-will doctrine. 687 S.W.2d 733, 735 (Tex. 1985). This exception allows an employee to sue for wrongful termination if she is fired for the sole reason that she refused to perform an illegal act. *Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995); *see Safeshred, Inc. v. Martinez,* 365 S.W.3d 655, 664 (Tex. 2012) ("A plaintiff may not bring a *Sabine Pilot* claim immediately after being asked to perform an illegal activity but must first refuse and be fired."). In this instance, the

---

footnote the Court dismissed the parents' argument that the COVID tests are EUA products, and thus cannot be mandatory under 21 USC § 360bbb-3, because the testing program is premised on parental consent and is not mandatory. The Court did not reach the issue of whether the statute would prohibit the school from requiring testing if it were a mandatory requirement. Note that *Jacobson v. Commonwealth of Massachusetts* is clearly distinguishable in the instant case as it does not deal with an experimental vaccine as that is understood today. Moreover, at the time of the opinion in 1905, the FDA had not yet been formed. It was formed a year later in the 1906 Pure Food and Drugs Act.

employee is being asked to participate in a scheme that violates clear policy requirements of the federal law creating the emergency use authorization. 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). The failure of the employee to go along with this scheme will lead to the wrongful discharge.

Given the combination of clear policy directives in federal law and exceptions under Texas law, Plaintiffs are substantially likely to prevail on the merits in this case.

In the backdrop of these matters are the various forms of the experimental vaccines and issues surrounding the lack of testing. The process for developing a vaccine normally takes place in several phases over several years. Yet, the current vaccines were in development *and* testing for no more than one year. The Advisory Committee on Immunization Practices as part of the Department of Health and Human Services Centers for Disease Control and Prevention held a Coronavirus Disease 2019 Vaccines Session on October 30, 2020. (Exh. C). One of the bullet points in the outline for that meeting states:

> Following participants for a mean of 2 months after the second dose as a timepoint to start making final decisions about safety is troubling. Concerns prevailed on making quick decisions on safety. While it is true that most [adverse events] of interest will be captured in the first 6 weeks, *there will be a need for long-term studies,* particularly due to the potential for vaccine-enhanced disease. (Exh. D, p. 19)(Emphasis added).

The importance and weight of this admission cannot be overstated. There is a concern that participants in the testing process were only followed for 2 months after taking the experimental vaccines. There is hesitancy on making "quick decisions." Yet, those quick decisions were obviously made as the vaccines were cleared less than 2 months after this meeting. It is these

experimental, not-fully-tested vaccines that Defendants wish to force upon the Plaintiffs. These concerns have unfortunately proven true as the experimental vaccines have been administered.

In 1990, the Vaccine Adverse Event Reporting Systems ("VAERS") was established as a national early warning system to detect possible safety problems in U.S. licensed vaccines.[7] VAERS is a passive reporting system, meaning it relies on individuals to voluntarily send in reports of their experiences to CDC and FDA. VAERS is useful in detecting unusual or unexpected patterns of adverse event reporting that might indicate a possible safety problem with a vaccine. This way, VAERS can provide CDC and FDA with valuable information that additional work and evaluation is necessary to further assess a possible safety concern. There were 4,434 death reports and over 12,619 serious injuries reported to the CDC's VAERS database from COVID-19 vaccines through May 10, 2021. By comparison, from July 1, 1997, until December 31, 2013, VAERS received 666 adult death reports.[8]

In spite of this, CEO Dr. Marc Boom made the following irresponsible statement in his April 2021 letter to employees: "Because science has proven that the COVID-19 vaccines are not only safe, but extremely effective . . ." (Exh. D). Nothing could be further from the truth. After less than a year of studying the vaccines, "science" is nowhere close to "proving" that the vaccines are safe. Such a statement is ludicrous considering the limited chronology and admitted lack of long-term studies. In fact, The Advisory Committee on Immunization Practices, as quoted

---

[7] VAERS is co-managed by the CDC and the FDA. VAERS accepts and analyzes reports of adverse events (possible side effects) after a person has received a vaccination. Anyone can report an adverse event to VAERS. Healthcare professionals are required to report certain adverse events and vaccine manufacturers are required to report all adverse events that come to their attention.

[8] Pedro L. Moro, Jorge Arana, Mria Cano, Paige Lewis, and Tom T. Shimabukuro, Deaths Reported to the Vaccine Adverse Event Reporting System, United States, 1997-2013, VACCINES, CID 2015:61 (September 2015).

otherwise above, found that, "Lack of confidence among [healthcare providers] can be boosted by providing them with language that helps them answer questions about such topics as how vaccine was licensed so quickly *when other vaccines take 15 years.*" (Exh. D, p 15). The CDC explicitly recognizes there is a lack of faith in the vaccines in the medical community based on the gross lack of testing. Boom did not mention anything remotely like this. His glib letter reads as though this is a settled matter.

Boom then tries to spin the "pause" of the administration of the Johnson & Johnson vaccine as a good thing. This supposedly "proves how closely the vaccines are being monitored." *Id*. In reality, a vaccine that had only been out for a matter of a few weeks was being "paused." And, it was being paused because the unwitting guinea pigs, i.e. U.S. citizens, were subjected to a experimental vaccine still in the early testing phase and it was exhibiting potentially serious adverse reactions.

Boom is at the helm of Defendants' *Pequod*, and the Plaintiffs in this matter are victims of these gross misstatements.

In summary, there is a federal statute ordering that unauthorized products, like these experimental vaccines, must be optional. Defendants have ignored and violated that statute. Plaintiffs are forced to either participate in this scheme or lose their jobs. All for an experimental vaccine that by the CDC's own account needs more study. It is clear the Plaintiffs have a rock-solid case against the Defendants.

C. **Plaintiffs Have Established a Substantial Threat of Immediate and Irreparable Harm for Which It has No Adequate Remedy at Law**

There are two classes of Plaintiffs: those who will not take the experimental vaccine and those who will. Those who do not take it will be terminated from their employment by the Defendants. That means they will forgo paychecks, benefits, including health coverage, and a

blemished record that they were terminated for failing to comply with a company policy. While it may be argued that the Plaintiffs, once they prevail on the merits, can recoup their losses, there are losses that cannot be recouped: the stress and anxiety of looking for a job; issues with credit reports and credit ratings that will suffer while waiting on justice; loss of investments in 401(k)'s; substandard healthcare with less expensive health policies. All of this while Methodist with its team of lawyers thrives. In fact, while Plaintiffs are anxious about their futures, Defendants are sending out emails promising vaccinated employees an extra paid day off and $1,000 bonuses this summer. (Exh. E).

As for those who feel forced subject themselves to the experimental vaccine, as mentioned above, it cannot be "untaken." Once it is in your system, it cannot be removed. There is no adequate remedy at law for that harm.

Staying the June 7, 2021 deadline will avoid these irreparable harms.

### D. The Threatened Injury to Plaintiffs Outweighs the Damage to the Houston Defendants and is not a Disservice to the Public

Defendants suffer absolutely no harm if this court grants the injunction. Defendants will be in the exact same position as every other hospital, save possibly one other, in the entire United States. There is no sense in which one harm "outweighs" the other. The Plaintiffs are clearly the ones to suffer injury if the injunction is not granted.

Until a couple of weeks ago, Defendants were the only hospital system to require employees to take the experimental vaccine. Now, there is reportedly one other hospital with the same requirement in Pennsylvania. In the Houston area alone, there is no such mandatory experimental vaccine requirement at Memorial Hermann, Texas Children's Hospital, The Women's Hospital, St. Joseph Hospital, M.D. Anderson Cancer Center, or any number of smaller

suburban hospitals. The public will not be disserved if the court grants the injunction and orders Defendants' deadline to be stayed until such time as this matter can be litigated.

## Conclusion

The facts set out above establish that Plaintiffs are entitled to a Temporary Restraining Order and Preliminary Injunction staying the Defendants' June 7, 2021 deadline as set out above. Plaintiffs are likely to succeed on the merits of their claims and the balance of interests favors granting a temporary restraining order. Accordingly, the requested Temporary Restraining Order and Preliminary Injunction should be granted and the Defendants should be enjoined from enforcing the June 7, 2021 deadline.

Respectfully submitted,

*/s/ Jared R. Woodfill*
Jared R. Woodfill
State Bar No. 00788715
Federal Bar No. 17069
WOODFILL LAW FIRM, P.C.
3 Riverway, Suite 750
Houston, Texas 77056
Tel: (713) 751-3080
Fax: (713) 751-3058
woodfillservice@gmail.com (service)
jwoodfill@woodfilllaw.com (non-service)
*Counsel for Plaintiffs*

## VERIFICATION

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned notary public in and for said county and state, on this day personally appeared Jared Woodfill and after being duly sworn, stated upon his oath that that he has read Plaintiffs' Original Petition and Verified Application for Temporary Restraining Order, and that the factual statements contained in the Verified Original Petition and Verified Application for Temporary Restraining Order are true and correct based upon his personal knowledge.

_____
Jared R. Woodfill

SUBSCRIBED AND SWORN TO before me this ___4___ day of June 2021, to which witness my hand and seal.

_____
NOTARY PUBLIC

Karen J Avery
My Commission Expires
04/08/2024
ID No 132432214

**CERTIFICATE OF CONFERENCE**

On June 4, 2021, the undersigned attorney called Defendants' counsel attempted to confer regarding the above motion.

/s/ Jared Woodfill
Jared Woodfill

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via electronic mail on the following counsel for Defendants on this 4th day of June 2021:

/s/ Jared Woodfill
Jared Woodfill